## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

**Resolute FP Canada Inc., the Conseil de l'Industrie forestière du Québec and the Ontario Forest Industries Association,**

**Plaintiffs,**

**v.**

**United States,**

**Defendant.**

**Court No. 23-00206**

## COMPLAINT

1.      Plaintiffs Resolute FP Canada Inc. ("Resolute"), the Conseil de l'Industrie forestière du Québec ("CIFQ") and the Ontario Forest Industries Association ("OFIA") (collectively, "Central Canada" or "Plaintiffs"),[1]  by and through their counsel, allege and state as follows:

### JURISDICTION

2.      Plaintiffs bring this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the United States Department of Commerce's ("Commerce") Final Results of the 2021 administrative review of the antidumping duty order on certain softwood lumber products from Canada, Case No. A-122-857.  *See Certain Softwood Lumber Products From Canada: Final Results of Antidumping Admin. Review and Final Determination of No Shipments; 2021*, 88

---

[1] *See* **Attachment A** for member companies whose interests CIFQ and OFIA represent in this action.

Fed. Reg. 50,106 (Dep't Commerce Aug. 1, 2023) ("Final Results"), and accompanying Issues & Decision Memorandum ("IDM"), as amended in *Certain Softwood Lumber Products From Canada: Amended Final Results of Antidumping Duty Administrative Review in Part; 2021*, 88 Fed. Reg. 61,511 (Dep't Commerce Sep. 7, 2023) (Amend. Final Results).

3.      This Court has exclusive jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c).

## PARTIES AND STANDING

4.      Resolute is "a foreign producer and exporter" of softwood lumber, CIFQ and OFIA are "trade{s} or business association{s} a majority of the members of which are producers, exporters, or importers of {softwood lumber};" and, therefore, Plaintiffs are interested parties within the meaning of 19 U.S.C. § 1677(9)(A) and 19 U.S.C. § 1516a(f)(3). Plaintiffs were also parties to the administrative proceeding that led to the determination that is being challenged here, as Plaintiffs entered appearances, fully participated in the proceeding, and submitted a case brief and rebuttal brief to Commerce in connection with that proceeding. Accordingly, Plaintiffs have standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

5.      Defendant is the United States of America, acting by and through the U.S. Department of Commerce.

## TIMELINESS OF ACTION

6.      On August 1, 2023, Commerce published in the Federal Register the Final Results, 88 Fed. Reg. at 50,106.

7.      As the Final Results involve imports of softwood lumber from Canada, a free trade area country within the meaning of 19 U.S.C. § 1516a(f)(9)(A), the time

limits for commencing an action before this Court do not begin to run until the 31st day after publication of the Final Results in the Federal Register, 19 U.S.C. § 1516a(a)(5). Thus, the statutory deadline for filing an appeal of the Final Results is thirty days from September 1, 2023, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii).

8.      Plaintiffs timely filed a Notice of Intent to Commence Judicial Review with the United States Secretary of the United States-Mexico-Canada Agreement ("USMCA") Secretariat on August 21, 2023. Plaintiffs timely filed a Summons, ECF No. 1, on October 2, 2023, within thirty days of September 1, 2023,[2] in accordance with 19 U.S.C. § 1516a(a)(2)(A), 19 U.S.C. § 1516a(a)(5), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court. Plaintiffs timely file this Complaint within thirty days of October 2, 2023 in accordance with Rule 3(a)(2).

## STANDARD OF REVIEW

9.      This Court reviews Commerce's Final Results under 19 U.S.C. § 1516a(b)(1)(B)(i) (whether Commerce's determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law").

## STATEMENT OF FACTS

10.      On March 9, 2022, Commerce initiated the fourth administrative review of the antidumping duty order on certain softwood lumber from Canada. *See Initiation of Antidumping and Countervailing Duty Admin. Reviews*, 87 Fed. Reg. 13,252, 13,254 (Dep't Commerce Mar. 9, 2022). The period of review ("POR") for this administrative review is January 1, 2021 to December 31, 2021. *Id.*

---

[2] Pursuant to CIT Rule 6(a)(1)(C), when the deadline to commence the action is a Saturday, the period continues to run until the end of the next business day.

11.     Commerce selected two companies, Canfor (consisting of Canadian Forest Products Ltd., Canfor Wood Products Marketing Ltd., and Canfor Corporation) and West Fraser (consisting of West Fraser Mills Ltd., Blue Ridge Lumber Inc., Manning Forest Products Ltd., and Sundre Forest Products Inc.), as mandatory respondents in the fourth administrative review.  *See* Mem. to Robert Bolling, Acting Director, Office IV, Antidumping and Countervailing Duty Operations, from Maisha Cryor, Int'l Trade Analyst, Office IV, Antidumping and Countervailing Duty Operations, "Administrative Review of the Antidumping Duty Order on Certain Softwood Lumber Products from Canada: Respondent Selection," (Apr. 29, 2022) (on record of Case No. A-122-857). Plaintiffs were not selected as a mandatory nor voluntary respondent in the fourth administrative review but participated in this proceeding.

12.     On January 27, 2023, Commerce published the Preliminary Results in the Federal Register.  See *Certain Softwood Lumber Products From Canada: Preliminary Results of Antidumping Duty Administrative Review*; 88 Fed. Reg. 5,306 (Dep't Commerce Jan. 27, 2023) ("Preliminary Results") and accompanying Decision Memorandum (Jan. 23, 2023) ("Prelim. Decision Mem.").

13.     In the Preliminary Results, Commerce calculated a dumping margin of 5.25 percent for Canfor, 6.90 percent for West Fraser.  *See* Preliminary Results, 88 Fed. Reg. at 5,306.  For the Preliminary Results, after applying the differential pricing methodology ("DPM"), including the Cohen's *d* test, Commerce determined to use the average-to-transaction method to calculate Canfor's and West Fraser's dumping margins based on the agency's finding that the two mandatory respondents' U.S. sales exhibited a pattern of prices that differed significantly among purchasers, regions, or time periods.  *See* Prelim. Decision Mem. at 10.

14.    To determine the dumping margin for companies subject to the fourth administrative review but not selected for individual examination (aka "non-selected companies"), Commerce then calculated the weighted-average of the dumping margins determined for the mandatory respondents using their ranged public sales values. *See* Mem. to Robert Bolling, Acting Director, Office IV, Antidumping and Countervailing Duty Operations, from Maisha Cryor, Int'l Trade Analyst, Office IV, Antidumping and Countervailing Duty Operations, "Preliminary Results of the Antidumping Duty Administrative Review of Certain Softwood Lumber Products from Canada: Calculation of the Rate for Non-Examined Companies" (Jan. 23, 2023) (on record of Case No. A-122-857). The result was 6.05 percent for non-selected companies. *See* Preliminary Results, 88 Fed. Reg. at 5,306.

15.    On February 27, 2023, Plaintiffs timely filed their case brief with Commerce.  *See* Letter to Sec'y Commerce from Baker & Hostetler LLP, "Softwood Lumber from Canada: AD Fourth Administrative Review, Central Canada's Case Brief" (Feb. 27, 2023) ("Central Canada Case Br.").  Plaintiffs argued that, with regard to the calculation of mandatory respondents' dumping margins and the resulting non-examined company margin applicable to Plaintiffs, (1) Commerce's application of the Cohen's *d* test was unreasonable; (2) the meaningful difference test does not analyze qualitative factors to make application of the Average-to-Transaction ("A-T") methodology reasonable; and (3) Commerce's use of zeroing is not in accordance with law. *Id.*

16.    For the Final Results, Commerce failed to revise its application of the DPM.  Commerce continued to apply the Cohen's *d* test to the mandatory respondents as part of its differential pricing analysis, affecting the non-selected

company margin as a result. *See* IDM at 18-36.  And Commerce disagreed that it was required by law to discontinue its use of "zeroing." *See id.* at 36-42.

17.     In the Final Results, Commerce again calculated a dumping margin of 5.25 percent for Canfor, 6.96 percent for West Fraser and 6.20 percent for non-selected companies.  Final Results, 88 Fed. Reg. at 50,107.

18.     Subsequently, the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("Petitioner") submitted a ministerial error allegation on August 2, 2023. See Letter to Sec'y Commerce from Picard Kentz & Rowe LLP, "Certain Softwood Lumber from Canada: Ministerial Error Comments," (Aug. 2, 2023) with regard to the calculation of West Fraser's margin. Commerce amended the Final Results to correct the ministerial error raised by Petitioner, calculating an amended dumping margin of 7.06 percent for West Fraser and 6.26 percent for non-selected companies. *See* Amend. Final Results, 88 Fed. Reg. at 61,511. No change was made in the Amended Final Results with regard to Commerce's DPM.

19.     This appeal followed.

## STATEMENT OF CLAIMS

20.     This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1).

21.     Commerce's Final Results (as amended) are unsupported by substantial evidence and are otherwise not in accordance with law in the following respects:

## COUNT ONE

22.     Paragraphs 1-21 are incorporated by reference.

23.     Commerce's findings based on the DPM suffer from several defects, including (1) when running the Cohen's *d* test, the first step in the DPM, Commerce fails to adhere to basic and widely-accepted statistical assumptions for the application of that test; (2) Commerce calculates the Cohen's *d* denominator with simple average standard deviations, disregarding the scholarly literature and ignoring recent jurisprudence that identify required preconditions for the use of the Cohen's *d* denominator and question Commerce's failure to use weighted average standard deviations for unequal sample sizes; (3) the ratio test discounts the plain language of the targeted dumping statute and cumulates into a single pattern differences that may exist across customers, regions, or time periods; and (4) the "meaningful difference" component of the DPM deliberately and systematically ignores alternative explanations for price observations (such as seasonality) and persuasive justification for reliance on the preferred Average-to-Average ("A-A") price comparison method. Commerce, therefore, fails to perform a "fair comparison" in determining dumping as required by the statute.  Commerce's findings are unsupported by substantial evidence and otherwise not in accordance with law.

**COUNT TWO**

24.     Paragraphs 1-23 are incorporated by reference.

25.     As a result of the flawed DPM, and without justification for resort to the A-T methodology, Commerce calculated dumping margins for the mandatory respondents using the A-T methodology with zeroing.  Without the A-T methodology, Commerce would not have used zeroing and without zeroing Commerce would have found no dumping margin for either Canfor or West Fraser and, hence, no dumping with

respect to the non-selected companies. The use of zeroing here is unsupported by substantial evidence and is otherwise not in accordance with the law.

**PRAYER FOR JUDGEMENT AND RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that this Court:

1.  Enter judgment in favor of Plaintiffs;

2.  Hold as unlawful Commerce's Final Results (as amended) that are the subject of this Complaint;

3.  Remand the Final Results to Commerce for a redetermination consistent with the judgment and finding of this Court; and

4.  Grant Plaintiffs such other relief as the Court deems just and proper.

Respectfully submitted,

Elliot J. Feldman
Michael S. Snarr
Ronald J. Baumgarten
Tung A. Nguyen

Baker Hostetler LLP
Counsel to Resolute, CIFQ and OFIA

Dated: October 30, 2023

**ATTACHMENT A**

CIFQ Members are:

1.  9224-5737 Québec inc. (a.k.a. A.G. Bois)
2.  Arbec Lumber Inc.
3.  B.B. Pallets Inc.
4.  Benoît & Dionne Produits Forestiers Ltée
5.  Blanchet Multi Concept Inc.
6.  Bois Aisé de Montréal Inc.
7.  Bois Bonsaï Inc.
8.  Bois Daaquam Inc.
9.  Bois D'Oeuvre Cedrico Inc. (a.k.a. Cederico Lumber Inc.)
10. Bois et Solutions Marketing SPEC, Inc.
11. Boisaco Inc.
12. Boscus Canada Inc.
13. Busque & Laflamme Inc.
14. Carrier & Bégin Inc.
15. Clermond Hamel Ltee
16. CWP - Industriel Inc.
17. CWP - Montreal Inc.
18. EACOM Timber Corporation
19. Goodfellow Inc.
20. Groupe Crête Chertsey
21. Groupe Crête division St-Faustin
22. Groupe Lebel inc.
23. Groupe Lignarex Inc.
24. Jan Woodlands (2001) Inc.
25. Kebois Ltee/Ltd.
26. Lafontaine Lumber Inc.
27. Les Bois d'œuvre Beaudoin Gauthier inc.
28. Les Bois Martek Lumber
29. Les Chantiers de Chibougamau Ltd.

30. Les Industries P.F. Inc.

31. Les Produits Forestiers D & G Ltee

32. Les Produits Forestiers Sitka Inc.

33. Lulumco inc.

34. Maibec inc.

35. Marcel Lauzon Inc.

36. Portbec Forest Products Ltd.

37. Produits Forestiers Petit Paris

38. Produits forestiers Temrex, s.e.c.

39. Produits Matra Inc.

40. Promobois G.D.S. inc.

41. René Bernard Inc.

42. Resolute FP Canada Inc. and affiliates

43. Scierie St-Michel inc.

44. Scierie West Brome Inc.

45. Séchoirs de Beauce Inc.

46. Usine Sartigan Inc.


OFIA members are:

1. Manitou Forest Products Ltd

2. Lecours Lumber Co. Limited

3. Nakina Lumber Inc.

4. Hornepayne Lumber LP

5. White River Forest Products L.P.

6. Midway Lumber Mills Ltd

7. Resolute FP Canada Inc. and affiliates.