IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| **RESOLUTE FP CANADA INC.**, et al.,<br><br>                    **Plaintiffs,**<br><br>          v.<br><br>**UNITED STATES,**<br><br>                    **Defendant,**<br><br>          **and**<br><br>**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,** et al.,<br><br>                    **Defendant-Intervenors.** | **Court No. 23-00206** |

## PROPOSED ORDER

Upon consideration of the Partial Consent Motion to Intervene as a Matter of Right as Plaintiff-Intervenors filed by Chaleur Forest Products Inc., Chaleur Forest Products L.P., Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., J.D. Irving, Limited, Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc., and all other papers and proceedings in this action, it is hereby:

**ORDERED** that the motion (ECF No. 37) is **DENIED IN PART AND GRANTED IN PART**; and it is further

**ORDERED** that the motion is **DENIED** with respect to Chaleur Forest Products Inc., Chaleur Forest Products L.P., Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc.; and it is further

**ORDERED** that the motion is **GRANTED** with respect to J.D. Irving, Limited; and it is further

**ORDERED** that J.D. Irving, Limited is entered as Plaintiff-Intervenor in this action.

**SO ORDERED.**

 

The Honorable Jennifer Choe-Groves, Judge

Dated: _____
      New York, New York

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| **RESOLUTE FP CANADA INC., et al.,** | |
| **Plaintiffs,** | |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant,** | **Court No. 23-00206** |
| **and** | |
| **COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, et al.,** | |
| **Defendant-Intervenors.** | |

## RESPONSE IN OPPOSITION TO MOTION TO INTERVENE

The Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("COALITION"), a defendant-intervenor in this action, respectfully submits this response in partial opposition to the motion to intervene filed by proposed plaintiff-intervenors Chaleur Forest Products Inc., Chaleur Forest Products L.P., Delco Forest Products Ltd., Devon Lumber Co. Ltd., H.J. Crabbe & Sons Ltd., J.D. Irving, Limited ("JDIL"), Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc. (collectively, the "NB Respondents"). *See* Partial Consent Mot. to Intervene as a Matter of Right as Pl.-Intervenors, Dec. 6, 2023 ("Mot. to Intervene"), ECF 37. As explained below, the

NB Respondents' motion must fail as the NB Respondents, with the exception of JDIL, do not meet the requirements for intervention as of right under the statute.[1]

## ARGUMENT

### I.     Procedural Background

This action was commenced by Resolute FP Canada Inc. ("Resolute"), the Conseil de l'Industrie forestière du Québec ("CIFQ"), and the Ontario Forest Industries Association ("OFIA") (collectively, "Plaintiffs" or "Central Canada") to contest the final results of the U.S. Department of Commerce's ("Commerce") 2021 administrative review of the antidumping duty order on certain softwood lumber products from Canada.  Summons, Oct. 2, 2023, ECF 1; *see also Certain Softwood Lumber Products From Canada: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021*, 88 Fed. Reg. 50,106 (Dep't Commerce Aug. 1, 2023) ("*Final Results*").  Central Canada participated in Commerce's administrative review and filed a case brief challenging aspects of Commerce's differential pricing methodology ("DPM").  *See* Compl. ¶ 15, Nov. 1, 2023, ECF 9.  Plaintiffs were not selected as a mandatory nor voluntary respondent in the underlying Commerce proceeding and were ultimately assigned the "non-examined companies" rate.  *See id.* ¶¶ 11, 17.

On appeal, Central Canada claims that Commerce's DPM "suffer{s} from several defects" that result in the agency's findings being unsupported by substantial evidence and otherwise not in accordance with law.  *Id.* ¶¶ 22-23.  Central Canada also claims that Commerce's use of "zeroing" is "unsupported by substantial evidence and is otherwise not in accordance with the law."  *Id.* ¶¶ 24-25.

---

[1]     As explained later in this response, the COALITION consents to JDIL being entered as a plaintiff-intervenor in this action.

On December 6, 2023, the NB Respondents filed a motion seeking plaintiff-intervenor status in this action.[2]  Mot. to Intervene at 1.  In their motion, NB Respondents claim to meet the requirements for intervention as of right and express their desire "to support Plaintiffs' arguments, particularly regarding the Department's . . . application of its differential pricing methodology."  *Id.* at 3, 9-10.  NB Respondents assert that intervention as of right is necessary to allow the NB Respondents the opportunity to present arguments as to why the non-selected rate determined in the *Final Results* was erroneous.  *Id.* at 5-6.

## II.   Intervention in Civil Actions Under Section 516a of the Tariff Act of 1930

"Intervention in this Court is governed by statute as well as by CIT Rule 24."  *House of Lloyd, Inc. v. United States*, 659 F. Supp. 248, 249 (Ct. Int'l Trade 1987).  Pursuant to Rule 24(a)(1), on timely motion, anyone who "is given an unconditional right to intervene by a federal statute" must be permitted to intervene.  USCIT R. 24(a)(1).  Congress, as part of the Customs Courts Act of 1980, established a right to intervene in actions commenced under section 516A of the Tariff Act of 1930 (the "Tariff Act").  Customs Courts Act of 1980 § 301, 28 U.S.C. § 2631(j).  Specifically, the statute provides that, "{a}ny person who would be adversely affected or aggrieved by a decision in a civil action pending" in this Court brought under section 516A of the Tariff Act, "may intervene as a matter of right" if that person is "an interested party who was a party to the proceeding in connection with which the matter arose."  28 U.S.C. § 2631(j)(1)(B).  Thus, Congress required that any person seeking to intervene must be both an "interested party" and a "party to the proceeding."  *Dofasco Inc. v. United States*, 519 F.

---

[2]      Besides the NB Respondents, no other exporter or producer subject to the *Final Results* moved to intervene as a plaintiff in this action before the deadline established by Rule 24(a)(3).  The "non-selected companies" rate calculated in the *Final Results* was assigned to 289 different exporters/producers.  *Final Results*, 88 Fed. Reg. at 50,108-10.

Supp. 2d 1284, 1287 (Ct. Int'l Trade 2007) ("To succeed upon its motion, {proposed intervenor} must show that it is an 'interested party' and 'a party to the proceeding in connection with which the matter arose.'"); *see also JCM, Ltd. v. United States*, 210 F.3d 1357, 1360 (Fed. Cir. 2000) (holding that a person seeking to commence an action under section 516A of the Tariff Act "must not only be an 'interested party,' but must also be a 'party to the proceeding'").

The term "interested party" is defined in the statute as having the same meaning given to such term in section 771(9) of the Tariff Act. 28 U.S.C. § 2631(k)(1); *see also* 19 U.S.C. § 1677(9) (definition of the term "interested party"). As such, the term includes such persons as foreign manufacturers and producers of subject merchandise, as well as the government of the country where such merchandise is produced or manufactured. 19 U.S.C. §§ 1677(9)(A)-(B).

"Although the statute defines the term 'interested party,' it does not define 'party to the proceeding.'" *Qingdao Taifa Group Co. v. United States*, 580 F. Supp. 2d 1342, 1344 (Ct. Int'l Trade 2008); *see also Nucor Corp. v. United States*, 516 F. Supp. 2d 1348, 1351 (Ct. Int'l Trade 2007) (noting that "the term 'party to the proceeding' is not defined by statute"); *Union Steel v. United States*, 617 F. Supp. 2d 1373, 1378 (Ct. Int'l Trade 2009) ("The statute does not define the term 'party to the proceeding.'"); *Laclede Steel Co. v. United States*, 92 F.3d 1206 (Fed. Cir. 1996) (unpublished table decision) (observing that "Title 28 provides no definition of 'party to the proceeding'"). This Court has explained, however, that the term "party to the proceeding" requires "meaningful participation" before the agency. *See Nucor Corp.*, 516 F. Supp. 2d at 1352. For example, in *Nucor Corp.*, the Court looked to Commerce's regulations for the meaning of the term "party to the proceeding." *Id.* at 1351 (noting that Commerce's regulations define "party to the proceeding" as "any interested party that actively participates, through written submissions of factual information or written argument, in a segment of a proceeding"

4

(quoting 19 C.F.R. § 351.102(b)(36))); *see also Legacy Classic Furniture, Inc. v. United States*, 774 F. Supp. 2d 1293, 1295 (Ct. Int'l Trade 2011) (explaining that "a party will be considered a 'party to the proceeding' only when that party provides factual information or promotes a legal position before Commerce").  This Court has denied motions to intervene when an intervenor-applicant fails to meet the "party to the proceeding" requirement of the statute.  *See, e.g.*, *Dofasco Inc.*, 519 F. Supp. 2d at 1290 (denying motion to intervene where intervenor-applicant's participation in the administrative proceeding was "limited to filings devoid of any substantive content"); *RHI Refractories Liaoning Co. v. United States*, 752 F. Supp. 2d 1377, 1380 (Ct. Int'l Trade 2011) (explaining that the intervenor-applicant must have "participated as a 'party to the proceeding' in the administrative determination under review" in order to intervene as a matter of right).

## III.   <u>Intervention as of Right Should Be Denied</u>

The NB Respondents' motion to intervene should be denied as their limited participation before Commerce does not meet the statutory requirements for intervention set by Congress. With the exception of JDIL,[3] the NB Respondents' submissions to Commerce were insufficient to confer "party to the proceeding" status on these respondents for purposes of intervention in this action as is further detailed below.

As an initial matter, the NB Respondents' motion is virtually identical to the motions to intervene filed by the NB Respondents in a pair of other actions challenging the *Final Results*. *Compare* Mot. to Intervene, *with* Partial Consent Mot. to Intervene as a Matter of Right as Pl.-

---

[3]      Unlike the other NB Respondents, JDIL submitted written argument asking that Commerce extend the deadline for the withdrawal of administrative review requests.  *See* **Exhibit 1**, P.R. 301.  Because JDIL made written argument at the agency level, the COALITION consents to JDIL being entered as a plaintiff-intervenor in this action.

Intervenors, *Government of Canada v. United States*, No. 23-00187 (Nov. 6, 2023), ECF 69; Partial Consent Mot. to Intervene as a Matter of Right as Pl.-Intervenors, *Canfor Corp. v. United States*, No. 23-00188 (Nov. 6, 2023), ECF 72.  Like those earlier filed motions (which remain pending), the NB Respondents' motion fails to address the established body of case law applying the statutory requirements for intervention to a variety of different fact patterns.  This failure is perplexing given that the motion to intervene at issue in this action was filed *after* the Defendant and the COALITION submitted responses explaining why the NB Respondents fail to qualify as "part{ies} to the proceeding" under case law from this Court.

In determining whether to grant the NB Respondents plaintiff-intervenor status in this action, the Court must decide whether these parties have met the "party to the proceeding" requirement found in the statute through meaningful participation in Commerce's administrative review.  In their motion, the NB Respondents claim that each of the proposed plaintiff-intervenors were "parties to the proceeding" because they participated in the underlying administrative review "through written submissions as respondents not selected for individual review (i.e., non-selected respondents)."  Mot. to Intervene at 4.  Specifically, NB Respondents attempt to support their claimed "party to the proceeding" status by directing the Court to requests for administrative review filed with Commerce in January 2022 before the review was initiated, as well as entries of appearance and applications requesting disclosure of business proprietary information under the administrative protective order ("APO").  *Id.* at 3-4, Exhibit 1.

Contrary to the NB Respondents' argument, the filings made by the NB Respondents at the agency level are inadequate to meet the "party to the proceeding" threshold for intervention as of right.  As discussed above, interested parties, such as the NB Respondents, must satisfy the "'party to the proceeding' requirement that Congress imposed as a condition" to obtain

intervenor status.  *See Nucor Corp.*, 516 F. Supp. 2d at 1351 (holding that the filing of an entry of appearance and APO application does not satisfy "any reasonable construction of the 'party to the proceeding' requirement").  In this case, the NB Respondents appear to admit that their filings at the agency level were limited to requests for administrative review, entries of appearance, and APO applications.  *See* Mot. to Intervene at 3-4.  Indeed, the filings included as Exhibit 1 to the NB Respondents' motion show the limited nature of these parties' participation at the agency level.  *Id.* at Exhibit 1 (copies of NB Respondents' filings with Commerce).

The submission of "bare-bones" review requests and "procedural filings" such as entries of appearance and APO applications are insufficient to bestow "party to the proceeding" status for purposes of intervention as of right.  *See Dongkuk Steel Mill Co. v. United States*, 567 F. Supp. 3d 1359 (Ct. Int'l Trade 2022).  In *Dongkuk*, the CIT rejected the argument that the submission of a request for administrative review, coupled with entries of appearances and requests to be placed on the service list, are sufficient to gain "party to the proceeding" status.  *Id.* at 1364.  Similarly, in *Dofasco*, the intervenor-applicant claimed "party to the proceeding" status based upon the filing of an entry of appearance, submitting an APO application, and participating in settlement negotiations with other parties.  *See Dofasco Inc.*, 519 F. Supp. 2d at 1288-89.  In that case, the Court concluded that such filings were "merely procedural steps that communicate nothing of substance {to Commerce} on any matter to be addressed in the administrative review."  *Id.* at 1289 (citing *Nucor Corp.*, 516 F. Supp. 2d at 1352).  Like the fact patterns considered in *Dongkuk* and *Dofasco*, none of the filings made by the NB Respondents contained factual information or argument relevant to the issues presented in the administrative review.

The various arguments presented in the NB Respondents' motion are without merit.  *See* Mot. to Intervene at 4-9.  First, while the NB Respondents argue that the phrase "party to the proceeding cannot be interpreted to exclude the NB Respondents" from this action, *see id.* at 4, the NB Respondents' motion fails to address the body of case law denying motions to intervene where the intervenor-applicant fails to meet the "party to the proceeding" requirement.  *See, e.g.*, *Dongkuk*, 567 F. Supp. 3d at 1364; *Dofasco*, 519 F. Supp. 2d at 1291.  Indeed, *Dongkuk* squarely rejects the NB Respondents' contention that requests for administrative review constitute the submission of factual information.  *See Dongkuk*, 567 F. Supp. 3d at 1363 (explaining that "Commerce's regulations distinguish between 'requests' for administrative reviews, 'factual information' and 'written argument'").

Furthermore, the NB Respondents' claim that they "have done everything reasonable and necessary to protect their own interests in the underlying administrative review" is unsound.  Mot. to Intervene at 6.  As the Federal Circuit has explained, the fact that Commerce may limit the number of respondents individually examined "does not preclude an interested party, not chosen as a respondent, from participating" either through the submission of factual information or written argument.  *JCM*, 210 F.3d at 1360.  Indeed, in the preceding segment of this proceeding, a group of non-selected respondents that largely overlaps with the parties seeking to intervene in this action submitted written argument regarding Commerce's respondent selection methodology.  *See* **Exhibit 2** (comments from New Brunswick interested parties).  In that same segment, JDIL submitted a case brief presenting written argument for Commerce's consideration despite not having been selected for individual examination.  *See* **Exhibit 3**.  In fact, the Plaintiffs in this action submitted a case brief despite sharing the same non-selected status as the NB Respondents, thus showing that a party's "non-selected" status is not an impediment to

participation before the agency. *See* Compl. ¶ 15 (noting that Central Canada participated in the underlying administrative review by filing a case brief with Commerce). In this case, the NB Respondents had the opportunity to submit factual information or written argument concerning Commerce's differential pricing methodology at the agency level to "protect their own interests" and elected to not exercise their option to participate.

Finally, the NB Respondents' citations to other cases where parties were allowed to participate as intervenors despite their limited participation at the agency level fails to demonstrate that the NB Respondents are entitled to intervene as of right in this case. *See* Mot. to Intervene at 7-9. In one of the cases identified by NB Respondents, the motion to intervene was disposed of by the clerk without submission to the court. *See id.* at Exhibit 2 (citing Order, *Jinko Solar Co. v. United States*, Oct. 28, 2019, ECF 27). The case law discussed throughout this response (and ignored in NB Respondents' motion) makes clear that an intervenor-applicant must satisfy the "party to the proceeding" requirement. As the NB Respondents submitted neither "written argument" nor "factual information," they were not parties to the proceeding for purposes of intervention as of right under the statute.

## CONCLUSION

For the above reasons, the NB Respondents' motion to intervene as of right should be granted with respect to JDIL and denied as to the other intervenor-applicants.

Respectfully submitted,

/s/ Zachary J. Walker

Zachary J. Walker
Jessica M. Link
Andrew W. Kentz
Nathaniel Maandig Rickard
Whitney M. Rolig
David A. Yocis

**PICARD KENTZ & ROWE LLP**
1750 K Street, NW – Suite 800
Washington, DC 20006
(202) 888-0595
zwalker@pkrllp.com

*Counsel to the COALITION*

December 13, 2023

10

# Exhibit 1

| Document | PR. Number |
|---|---|
| Letter from White & Case LLP to Commerce, Request for Extension of Deadline to Withdraw Request for Administrative Review (May 31, 2022) (excerpt) | 301 |

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
**T** +1 202 626 3600

**whitecase.com**

May 31, 2022

Case Number A-122-857
Total Pages:  57
Administrative Review
for the Period 01/01/21 – 12/31/21
AD/CVD Operations, Office IV
Contains no business proprietary information

**PUBLIC DOCUMENT**

BY ELECTRONIC FILING

The Honorable Gina M. Raimondo
Secretary of Commerce
Attention: Enforcement and Compliance
APO/Dockets Unit, Room 18022
U.S. Department of Commerce
14th Street and Constitution Avenue, NW
Washington, DC 20230

Re:    **Certain Softwood Lumber Products from Canada:   Request for Extension of Deadline to Withdraw Request for Administrative Review**

Dear Secretary Raimondo:

On behalf of J.D. Irving, Limited ("J.D. Irving"), we request an extension of the deadline to withdraw J.D. Irving's request for an administrative review in the above-referenced antidumping ("AD") proceeding (the "2021 AD Review").  Because the Department's notice of initiation of the 2021 AD Review was published on March 9, 2022, the deadline for withdrawing requests for review is Tuesday, June 7, 2022 (*i.e.*, 90 days after the date of publication).[1]  J.D.

---

[1] *See* 19 C.F.R. § 351.213(d)(1).

WHITE & CASE

The Honorable Gina M. Raimondo
May 31, 2022

Irving respectfully requests a six-month extension (*i.e.*, until Wednesday, December 7, 2022) because ongoing litigation could moot its reason for requesting a review.

Under 19 C.F.R. § 351.213(d)(2), the Department may extend the deadline for withdrawing a request for review if "it is reasonable to do so." The Department has found reasonable grounds to grant extensions of six months or longer where an event occurring after expiry of the 90-day deadline to withdraw nullified the party's reason for requesting a review.[2] For example, in *Butt-Weld Pipe Fittings from China*, a Malaysian exporter and two importers requested a review as a "protective measure" in light of an affirmative preliminary determination by the Department that imports from the Malaysian exporter were circumventing the AD order on China (and therefore were preliminarily subject to the suspension of liquidation).[3] More than six months after the 90-day-withdrawal deadline had expired, the parties requested an extension of the deadline upon the Department's issuance of a ***negative*** final circumvention determination with respect to certain of the Malaysian exporter's U.S. shipments.[4] The Department determined it was reasonable under § 351.213(d)(2) to grant the extension, because the parties' "sole reason for requesting a review . . . was no longer at issue."[5]

---

[2] *See*, *e.g.*, *Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China*, 84 Fed. Reg. 42897-42898 (Aug. 19, 2019) (rescission of admin. review) ("*Butt-Weld Pipe Fittings from China*"); *Agreement Suspending the Antidumping Investigation on Uranium from the Russian Federation*, 85 Fed. Reg. 67517, 67517 (Oct. 23, 2020) (rescission of admin. review) (granting an extension of more than six months because the basis for the party's withdrawal occurred after expiration of the 90-day time limit).

[3] *See Butt-Weld Pipe Fittings from China* at 42897.

[4] *See id.*

[5] *See id.* at 42897-42898.

2

**WHITE & CASE**

The Honorable Gina M. Raimondo
May 31, 2022

For similar reasons, it would be reasonable to extend the deadline for J.D. Irving to withdraw its request for a 2021 AD Review.  On December 9, 2021, the Department issued AD cash deposit instructions to U.S. Customs and Border Protection ("CBP"), assigning J.D. Irving an AD cash deposit rate of 11.59%.[6]  On December 30, 2021, J.D. Irving commenced an appeal at the Court of International Trade ("CIT") contesting the Department's *Cash Deposit Instructions*.[7]  J.D. Irving claims the *Cash Deposit Instructions* were unlawfully applied to J.D. Irving and requests equitable/injunctive relief in the form of reinstatement of the prior AD cash deposit rate as of December 2, 2021.[8]  J.D. Irving requested a 2021 AD Review solely as a protective measure – in case the CIT were to disagree that the 11.59% cash deposit rate was unlawfully assigned to J.D. Irving – and no other party requested a review of J.D. Irving.  If the CIT were to agree with J.D. Irving and grant the requested relief, J.D. Irving's reason for requesting a 2021 AD Review would no longer be at issue.  Furthermore, because J.D. Irving was not selected as a mandatory respondent in the 2021 AD Review, rescission of the review with respect to J.D. Irving would not waste Department resources.   In light of these circumstances, a six-month extension of the deadline for J.D. Irving to withdraw its request for review is warranted under 19 C.F.R. § 351.213(d)(2).

* * * * *

This submission contains factual information placed on the record by J.D. Irving under 19 C.F.R. § 351.102(b)(21)(v) (*i.e.*, cash deposit instructions and J.D. Irving's CIT complaint).

---

[6] *See* Cash Deposit Instructions, Message No. 1343410 (A-122-857) (Dec. 9, 2021) ("*Cash Deposit Instructions*") (**Attachment**).

[7] *See* Complaint, Court No. 21-00641 (Dec. 30, 2021) (**Attachment**).

[8] *See id.* at 14-16 (**Attachment**).

3

Barcode:4246711-01 A-122-857 REV - Admin Review 1/1/21 - 12/31/21

**WHITE & CASE**

The Honorable Gina M. Raimondo
May 31, 2022

The information submitted under § 351.102(b)(21)(v) does not meet any of the definitions of factual information described in § 351.102(b)(21)(i)-(iv) because it is not:  (1) submitted in response to initial or supplemental questionnaires; (2) submitted in support of allegations; (3) publicly available information to value factors under § 351.408(c); or (4) evidence placed on the record by the Department.  The submitted information provides relevant context for J.D. Irving's (1) decision to request a 2021 AD Review as a protective measure and (2) rationale for requesting an extension of the withdrawal deadline, and therefore should be considered.

We have served a copy of this submission as indicated in the attached certificate of service.  Please contact us if you have any questions regarding this submission.

Sincerely,

Walter J. Spak
Jay C. Campbell
Allison Kepkay
Cristina Cornejo
White & Case LLP
Counsel to J.D. Irving, Limited

4



J. D. Irving, Limited
300 Union Street
Saint John, NB
E2L 4Z2

I, M. Ross Langley, Secretary and authorized signatory of J.D. Irving, Limited, certify that I prepared or otherwise supervised the preparation of the attached submission of J.D. Irving, Limited's Request for an Extension of the Deadline to Withdraw Request for Review, filed on May 31, 2022, pursuant to the Administrative Review for the period January 1, 2021 – December 31, 2021, under the antidumping duty order on softwood lumber from Canada (Case Number A-122-857). I certify that the public information and any business proprietary information of J.D. Irving, Limited contained in this submission is accurate and complete to the best of my knowledge. I am aware that the information contained in this submission may be subject to verification or corroboration (as appropriate) by the U.S. Department of Commerce. I am also aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government. In addition, I am aware that, even if this submission may be withdrawn from the record of the antidumping duty proceeding, the U.S. Department of Commerce may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification. I certify that a copy of this signed certification will be filed with this submission to the U.S. Department of Commerce.

Signature: _____

Date:      May 31, 2022

Barcode:4246711-01 A-122-857 REV - Admin Review 1/1/21 - 12/31/21

## CERTIFICATION OF LEGAL REPRESENTATIVE

I, Jay C. Campbell, with the law firm of White & Case LLP, counsel to J.D. Irving, Limited ("J.D. Irving"), certify that I have read the attached Request for Extension of the Deadline to Withdraw Request for Review, filed on May 31, 2022, pursuant to the administrative review for the period January 1, 2021 – December 31, 2021, under the antidumping duty order on Softwood Lumber Products from Canada (Case Number A-122-857).  In my capacity as counsel for this submission, I certify that the information contained in this submission is accurate and complete to the best of my knowledge.  I am aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government.  In addition, I am aware that, even if this submission may be withdrawn from the records of the antidumping duty proceeding, the Department may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification.  I certify that a copy of this signed certification will be filed with this submission to the U.S. Department of Commerce.

Signature: _____

Date:        May 31, 2022

AMERICAS 114402606

PUBLIC CERTIFICATE OF SERVICE

I, Jay C. Campbell, of White & Case LLP, certify that copies of the attached submission were served by electronic mail on this 31ˢᵗ day of May 2022, on the following parties:

Joanne E. Osendarp, Esq.
**McDermott Will & Emery**
500 N. Capitol Street, NW
Washington, DC 20001-1531
Email: josendarp@mwe.com

Elliot J. Feldman, Esq.
**Baker & Hostetler LLP**
Suite 1100
1050 Connecticut Ave., NW
Washington, DC 20036-5304
Email: efeldman@bakerlaw.com
        trade@bakerlaw.com

Zachary J. Walker, Esq.
**Picard Kentz & Rowe LLP**
Suite 800
1750 K Street, NW
Washington, DC 20006
Email: zwalker@pkrllp.com

Amy Jenkins Lentz, Esq.
**Steptoe & Johnson LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Email: alentz@steptoe.com
        Steptoelumber@steptoe.com

R. Will Planert, Esq.
**Morris, Manning & Martin, LLP**
Suite 600
1401 I Street, NW
Washington, DC 20005
Email: wplanert@mmmlaw.com
        tradeservice@mmmlaw.cm

H. Deen Kaplan, Esq.
**Hogan Lovells US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Email: deen.kaplan@hoganlovells.com
        lumber@hoganlovells.com

Lynn Fischer Fox, Esq.
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
Email: lynn.fischerfox@apks.com
        xlumber@arnoldporter.com

Spencer S. Griffith, Esq.
**Akin Gump Strauss Hauer & Feld LLP**
2001 K Street, NW
Washington, DC 20006
Email: sgriffith@akingump.com

Matthew J. Clark, Esq.
**ArentFox Schiff LLP**
1717 K Street, NW
Washington, DC 20006-5344
Email: matthew.clark@afslaw.com
        lumber@arentfox.cm

Richard Weiner, Esq.
**Sidley Austin LLP**
1501 K Street, NW
Washington, DC 20005
Email: rweiner@sidley.com

Donald Harrison, Esq.
**Gibson, Dunn & Crutcher LLP**
1050 Connecticut Ave., NW
Washington, DC 20036-5306
Email: dharrison@gibsondunn.com
        lumber@gibsondunn.com

Myles Getlan, Esq.
**Cassidy Levy Kent (USA) LLP**
Suite 400
900 19th Street, NW
Washington, DC 20006
Email: mgetlan@cassidylevy.com
        records@cassidylevy.com

Kristin H. Mowry, Esq.
**Mowry & Grimson PLLC**
Suite 810
5335 Wisconsin Avenue, NW
Washington, DC 20015
Email: khm@mowrygrimson.com
       trade@mowrygrimson.com

Heather Jacobson, Esq.
**Junker & Nakachi, P.C**.
Suite 100
2815 Elliott Avenue
Seattle, WA  98121-2991
Email: hjacobson@tradelawcounsel.com

Stephanie Hartmann, Esq.
**Wilmer Cutler Pickering Hale and Dorr LLP**
1875 Pennsylvania Ave., NW
Washington, DC  20006
Email: stephanie.hartmann@wilmerhale.com

Chris Dirks
**Burrows Lumber (CD) Ltd.,**
**Theo A Burrows Lumber Company Limited**
25 Trottier Bay
Winnipeg
Manitoba, Canada R3T 3R3
Email: cdirks@burrowslumber.com

Jay C. Campbell

# Exhibit 2

| Document |
|----------|
| Letter from Sidley Austin LLP to Commerce, Rebuttal to Petitioner's Comments on CBP Data and Request for Sampling (Mar. 29, 2021) (POR: 01/01/2020-12/31/2020) (excerpt) |

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

**SIDLEY**

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

RWEINER@SIDLEY.COM
+1 202 736 8790

## PUBLIC DOCUMENT

March 29, 2021

The Honorable Gina M. Raimondo
Secretary of Commerce
U.S. Department of Commerce
Constitution Avenue & 14th Street, NW
Washington, DC 20230

Case No.: A-122-857
Number of Pages: 104
Administrative Review
POR: 01/01/2020 – 12/31/2020
AD/CVD Operations, Office IV

### THIS DOCUMENT CONTAINS NO PROPRIETARY INFORMATION

Attention:    Jeff Pedersen

Re:    Certain Softwood Lumber Products from Canada: Rebuttal to Petitioner's Comments on CBP Data and Request for Sampling

Dear Madam Secretary:

On behalf of Chaleur Sawmills LP,[1] Delco Forest Products Ltd., Devon Lumber Co.

Ltd., Fornebu Lumber Company Inc.,[2] H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc.,

Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc.

(collectively, the "New Brunswick Lumber Producers" or "NBLP"), we hereby submit this

rebuttal to the Comments on CBP Data and Request for Sampling filed by the Committee

Overseeing Action for Lumber International Trade Investigations or Negotiations

("COALITION" or "Petitioner") on March 23, 2021, in the above-captioned antidumping duty

---

[1]    As of January 1, 2021, Chaleur Sawmills LP changed its name to Chaleur Forest Products LP.
[2]    As of January 1, 2021, Fornebu Lumber Company Inc. changed its name to Chaleur Forest Products Inc.

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 2

("AD") third administrative review ("AR3") on certain softwood lumber products from Canada.[3] These comments are timely filed in accordance with the deadline established in the initiation notice for this review issued by the Department of Commerce (the "Department").[4] The initiation notice indicated that rebuttal comments on respondent selection would be due within five days of the deadline for initial comments[5] – which was on March 23, 2021[6] – making March 29, 2021, the deadline for rebuttal comments on respondent selection (because March 28 falls on a Sunday). Therefore, these rebuttal comments on respondent selection are timely filed.

We submit that the Department should reject Petitioner's arguments for the Department to use sampling pursuant to 19 U.S.C. § 1677f-1(c)(2)(A) to select mandatory respondents for individual examination in this AD administrative review.[7] Petitioner made similar arguments for sampling in the first administrative review ("AR1") and second administrative review ("AR2") in this proceeding, which the Department appropriately rejected.[8] The Department

---

[3]    *See* Letter from Picard Kentz & Rowe LLP to the Hon. Gina M. Raimondo, DOC Case No. A-122-857, dated March 23, 2021 ("Petitioner's CBP Data and Sampling Comments").

[4]    *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 12599 (Dep't of Commerce Mar. 4, 2021) ("AR3 *Initiation Notice*").

[5]    AR3 *Initiation Notice*, 86 Fed. Reg. at 12600.

[6]    *See* Memorandum from Jeff Pedersen to The File, "Third Administrative Review of the Antidumping Duty Order on Certain Softwood Lumber Products from Canada: Release of Customs and Border Protection Data and Notification of Respondent Selection Methodology," DOC Case No. A-122-857, dated March 16, 2021.

[7]    *See* Petitioner's CBP Data and Sampling Comments at 5-19.

[8]    *See* Memorandum from Robert Galantucci to Abdelali Elouaradia, "Administrative Review of the Antidumping Duty Order on Certain Softwood Lumber Products from Canada: Respondent Selection," DOC Case No. A-122-857, dated May 16, 2019 ("AR1 Respondent Selection Memo") at 6-8 (attached to Petitioner's CBP Data and Sampling Comments at

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 3

should do so again for similar reasons. Specifically, Petitioner's arguments must fail because:

(i) the Department's criteria for applying sampling in AD administrative reviews are not

satisfied in this case; and (ii) the time and resource constraints for this administrative review

make sampling an infeasible methodology. The Department should therefore select the largest

exporters during the period of review ("POR") as mandatory respondents pursuant to 19 U.S.C.

§ 1677f-1(c)(2)(B), just as it did in AR1 and AR2, as well as additional voluntary respondents

that the Department's resources allow.

## I.   The Department's Criteria for Applying Sampling in AD Administrative Reviews Are Not Satisfied in this Case

Importantly, Petitioner is wrong that each of the criteria set forth in the Department's

*Antidumping Sampling Notice*[9] are satisfied in the present case.[10] To recall, the Department set

forth four criteria for the use of sampling in AD administrative reviews in the *Antidumping*

*Sampling Notice*:

> In general, the Department will normally rely on sampling for
> respondent selection purposes in AD administrative reviews when
> the following conditions are met: (1) There is a request by an
> interested party for the use of sampling to select respondents;
> (2) the Department has the resources to examine individually at
> least three companies for the segment; (3) the largest three

---

Exhibit 3); Memorandum from Jeff Pedersen to Abdelali Elouaradia, "Administrative Review of the Antidumping Duty Order on Certain Softwood Lumber Products from Canada: Respondent Selection," DOC Case No. A-122-857, dated May 20, 2020 ("AR2 Respondent Selection Memo") at 5-8 (attached to Petitioner's CBP Data and Sampling Comments at Exhibit 4).

[9]      *See Antidumping Proceedings: Announcement of Change in Department Practice for Respondent Selection in Antidumping Duty Proceedings and Conditional Review of the Nonmarket Economy Entity in NME Antidumping Duty Proceedings*, 78 Fed. Reg. 65963, (Dep't of Commerce, Nov. 4, 2013) ("*Antidumping Sampling Notice*").

[10]      *See* Petitioner's CBP Data and Sampling Comments at 5-19.

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 4

> companies (or more if the Department intends to select more than
> three respondents) by import volume of the subject merchandise
> under review account for normally no more than 50 percent of total
> volume; and (4) information obtained by or provided to the
> Department provides a reasonable basis to believe or suspect that
> the average export prices and/or dumping margins for the largest
> exporters differ from such information that would be associated
> with the remaining exporters.[11]

However, the fourth criterion – i.e., the existence on the record of information providing

a reasonable basis to believe or suspect differences in average export prices and/or dumping

margins between large and small exporters – is not satisfied in this case.  Petitioner offers

assertions and speculation to support this criterion, but it is well-understood that such assertions

and speculation are not substantial evidence in support of a finding.[12]

On this topic, the Department explained in its AR1 Respondent Selection Memo and

AR2 Respondent Selection Memo that the Department utilizes sampling *rarely* and the evidence

required to support sampling typically derives from *multiple* prior reviews of the order at issue:

> In the <u>rare</u> cases where Commerce relies on sampling to select
> respondents, <u>it is typically where there are multiple, and often
> numerous, prior reviews to draw upon for evidence of margin
> differentials attributable to size.</u>[13]

---

[11]     *Antidumping Sampling Notice*, 78 Fed. Reg. at 65964-65.

[12]     *See Asociacion Colombiana de Exportadores de Flores v. United States*, 704 F. Supp.
1114, 1117 (Ct. Int'l Trade 1989), *aff'd*, 901 F.2d 1089 (Fed. Cir. 1990) ("Speculation, however,
is not support for a finding").

[13]     AR1 Respondent Selection Memo at 6 (underline added) (attached to Petitioner's CBP
Data and Sampling Comments at Exhibit 3); AR2 Respondent Selection Memo at 6 (underline
added) (attached to Petitioner's CBP Data and Sampling Comments at Exhibit 4).

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 5

The Department rejected Petitioner's sampling requests in both AR1 and AR2 because of, *inter alia*, a lack of multiple prior reviews evidencing margin differentials attributable to size. Likewise, multiple prior reviews still do not exist in the current proceeding, let alone ones that provide evidence of margin differentials attributable to size.

Just as in the AR2 Respondent Selection Memo, at this time it remains the case that "{t}here has been only one prior review of the current *Order*."[14] Because of the tolling associated with the COVID-19 pandemic and the Department taking advantage of the extensions permitted under the statute, the preliminary results of AR2 are not due until May 20, 2021.[15]

As for AR1, the Department published its final results on November 30, 2020.[16] However, the Department calculated final dumping margins of 1.15%, 1.40%, and 1.99% for the three mandatory respondents, and an all others rate of 1.57%.[17] The Department found the AR1 preliminary results did not support the use of sampling in AR2 because the AR1 preliminary dumping margins "were within one percentage point of each other."[18] The same is true for the AR1 final results. Thus, the AR1 final results do not evidence any disparity in dumping margins

---

[14]  AR2 Respondent Selection Memo at 6 (attached to Petitioner's CBP Data and Sampling Comments at Exhibit 4).

[15]  *See* Memorandum from Maisha Cryor to James Maeder, "Certain Softwood Lumber Products from Canada: Extension of Deadline for Preliminary Results of Second Antidumping Duty Administrative Review," DOC Case No. A-122-857, dated January 8, 2021.

[16]  *Certain Softwood Lumber Products from Canada: Final Results of Antidumping Duty Administrative Review; 2017–2018*, 85 Fed. Reg. 76519 (Dep't of Commerce Nov. 30, 2020) ("AR1 *Final Results*").

[17]  AR1 *Final Results*, 85 Fed. Reg. at 76520.

[18]  AR2 Respondent Selection Memo at 6 (attached to Petitioner's CBP Data and Sampling Comments at Exhibit 4).

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 6

among exporters in Canada, whether between small and large exporters, or among exporters

from different geographical locations within Canada, which could support the use of sampling in

AR3.

Petitioner also relies on illogical assertions and speculation, rather than actual evidence,

to argue that margin differentials by company size exist in the current case.  In essence,

Petitioner presents certain facts that: (i) softwood lumber prices were volatile during the POR;

and (ii) small- and medium-sized lumber companies obtained certain government assistance in

Canada to weather the COVID-19 pandemic.[19]  From these few facts, Petitioner makes the

remarkable leap that small- and medium-sized Canadian lumber companies must have had

different dumping margins than large Canadian lumber companies during the POR.  However,

no such leap is warranted.

First, in Section II.D.1 of its submission, Petitioner simply presents a factual discussion

of softwood lumber price volatility during the POR.[20]  Petitioner provides no actual evidence

that demonstrates that such price volatility translated into different export prices and/or dumping

margins for small- and medium-sized Canadian lumber companies as compared with large

Canadian lumber companies during the POR.

Second, in Section II.D.2 of its submission, Petitioner asserts that the volatility in the

lumber market "had a disproportionate impact on smaller producers and exporters of softwood

lumber products," which it believes is the case because one small British Columbia lumber

---

[19]     *See* Petitioner's CBP Data and Sampling Comments at 10-19.
[20]     *See* Petitioner's CBP Data and Sampling Comments at 11-14.

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 7

company – Sinclar Group Forest Products Ltd. – curtailed its operations due to the COVID-19 pandemic, and small- and medium-sized Canadian lumber companies received certain government assistance to weather the COVID-19 pandemic.[21]  Again, none of this evidences how the export prices and/or dumping margins for small- and medium-sized Canadian lumber companies may have differed from those for large Canadian lumber companies during the POR. The experience of one small British Columbia lumber company, even if it spoke to that company's pricing behavior, cannot be extrapolated to the hundreds of lumber producers in Canada.  Moreover, in the AR2 Respondent Selection Memo, the Department explained that while government subsidies may be relevant in the countervailing duty ("CVD") context,[22] they are not relevant in the AD context: "Although the geographic region of the respondent may affect the province-specific subsidies for which the respondent is eligible in the countervailing duty context, we do not find evidence of a demonstrated effect on dumping behavior."[23]

Third, in Section II.D.3 of its submission, Petitioner asserts that small- and medium-sized Canadian lumber companies faced increased costs during the POR due to the impact of

---

[21]    *See* Petitioner's CBP Data and Sampling Comments at 14-17.

[22]    This should not be construed to suggest that sampling would be justified in the concurrent third administrative review in the CVD proceeding in this case.  Sampling would also be unjustified in the third CVD administrative review in this case because, *inter alia*, the *Antidumping Sampling Notice* does not apply to CVD administrative reviews and there is nothing different about the third CVD administrative review in this case as compared with other CVD administrative reviews, including the first and second CVD administrative reviews in this case, in which the Department has rejected sampling.

[23]    AR2 Respondent Selection Memo at 7 (attached to Petitioner's CBP Data and Sampling Comments at Exhibit 4).

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 8

COVID-19.[24]  However, this section of Petitioner's submission is utterly devoid of any citation to facts; Petitioner merely posits that small- and medium-sized Canadian lumber companies must have had different cost structures because of the government assistance they received to weather the COVID-19 pandemic.  Petitioner also does not explain how different cost structures, even if true, translates into different export prices or dumping margins, when the latter is what is required to support the use of sampling.

Thus, rather than actual evidence, Petitioner relies on a series of illogical leaps to conclude that margin differentials based on company size must exist in this case to justify sampling.  The Department must not base any determination to rely on sampling on such assertion and speculation.

Finally, Petitioner's factual evidence and argument actually support selecting the largest exporters as the mandatory respondents, rather than using sampling, in this review.  Petitioner explains that it was the large Canadian lumber companies that improved their posture during the POR:

> While SMEs struggled through the first half of the year, *large companies leveraged the volatility in the lumber market to increase their position in the market* ….  Thus, while small- and medium-sized companies turned to the government for assistance with their costs, *large lumber producers reaped the benefits of price volatility.*[25]

However, the Department has previously found that an increase in import share by the largest

---

[24]     *See* Petitioner's CBP Data and Sampling Comments at 17-19.
[25]     Petitioner's CBP Data and Sampling Comments at 17 (emphases added).

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 9

exporters of subject merchandise means there has not been "a flood of imports from small, never-before-investigated producers increasing their market share via unchecked dumping," and thus "supports the selection of the largest exporters in this segment of the proceeding as the mandatory respondents."[26]  As such, if Petitioner is correct that the large Canadian lumber companies improved their posture during the POR, this favors the Department selecting the largest exporters as the mandatory respondents in this review.

## II.    The Time and Resource Constraints for this Administrative Review Make Sampling an Infeasible Methodology

In addition to the foregoing, the Department's time and resource constraints also make sampling an infeasible methodology in this administrative review.

Of note, in addition to lacking evidence of margin differentials, the Department rejected the use of sampling in AR1 and AR2 also because of its time constraints.  In doing so, it explained that it needed to give interested parties an opportunity to comment on its proposed methodology and then conduct its sampling after the deadline for withdrawing review requests (to ensure the pool of respondents is fixed).  The Department explained that this would leave it insufficient time to review the respondents' complex responses, especially because the use of sampling would likely result in one or more previously unexamined respondents.[27]  These

---

[26]     Memorandum from Ibrahim Baig to Melissa G. Skinner, "Certain Frozen Warmwater Shrimp from India: Selection of Respondents for Individual Review," DOC Case No. A-533-840, dated June 15, 2017, at 8 (attached hereto at Exhibit 1).

[27]     *See* AR1 Respondent Selection Memo at 6 (attached to Petitioner's CBP Data and Sampling Comments at Exhibit 3); AR2 Respondent Selection Memo at 5-6 (attached to Petitioner's CBP Data and Sampling Comments at Exhibit 4).

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 10

circumstances in the present review are not unlike the ones the Department faced in AR1 and

AR2.

 Furthermore, on the issue of resource constraints, Petitioner forgets that sampling

pursuant to 19 U.S.C. § 1677f-1(c)(2)(A) requires not just any sample of foreign exporters or

producers, but rather a "*statistically valid*" representation of the foreign exporters or producers

involved.  In this regard, in rejecting sampling in the first and second administrative reviews in

the parallel CVD proceeding, the Department explained that a statistically valid sample that

appropriately accounts for company size and geographical spread across Canada's ten provinces

would require selecting *at least 30* mandatory respondents, which is infeasible given the

Department's limited resources.[28]  The Department also lacks resources to review at least 30

mandatory respondents in the current AD administrative review, so it is not possible for the

Department to resort to a statistically valid sampling methodology here.

 Even if it were possible to have a statistically valid sample of less than 30 mandatory

respondents, as the Department explained in its AR1 Respondent Selection Memo and AR2

Respondent Selection Memo, sampling would likely result in one or more previously

unexamined respondents submitting complex responses for the first time, which would require

---

[28] *See* Memorandum from Kristen Johnson to Erin Begnal, "Administrative Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada: Respondent Selection," DOC Case No. C-122-858, dated May 17, 2019, at 6 (attached hereto at Exhibit 2); Memorandum from Benjamin A. Smith and Samuel M. Brummitt to Erin Begnal, "Administrative Review of the Countervailing Duty Order on Certain Softwood Lumber Products from Canada: Respondent Selection," DOC Case No. C-122-858, dated May 19, 2020, at 7 (attached hereto at Exhibit 3).

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 11

close review by the Department and likely additional supplemental questionnaires.  Amidst the

COVID-19 crisis that is already straining the Department's resources, and absent any actual

evidence of margin differentials in this administrative review, sampling would therefore create

an unnecessary additional burden on the Department that the Department may avoid by simply

rejecting Petitioner's request.

## III.     Conclusion

In sum, we respectfully request that, if the Department determines that it cannot

individually examine each respondent, the Department reject the use of sampling and instead

select the exporters and producers accounting for the largest volume of the subject merchandise

exported to the United States during the POR as the mandatory respondents for this review, as

well as additional voluntary respondents that the Department's resources allow.

*  *  *

In accordance with Department regulation 19 C.F.R. § 351.303(b), we hereby submit this

public document.  This submission contains factual information placed on the record under

19 C.F.R. § 351.102(b)(21)(v) – i.e., documents from the administrative record of another

Department proceeding.  This information does not meet any of the definitions of factual

information described in § 351.102(b)(21)(i)-(iv) because it is not: (1) submitted in response to

initial or supplemental questionnaires; (2) submitted in support of allegations; (3) publicly

available information to value factors under § 351.408(c); or (4) evidence placed on the record

by the Department.  Copies of this public submission will be served on the parties shown on the

attached certificate of service.

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

# SIDLEY

The Honorable Gina M. Raimondo
March 29, 2021
Page 12

Thank you for your attention to this matter.  If you have any questions regarding this

submission, please contact the undersigned.

Respectfully submitted,

Richard L.A. Weiner
James Mendenhall
Rajib Pal

Counsel to Chaleur Sawmills LP, Delco Forest
Products Ltd., Devon Lumber Co. Ltd., Fornebu
Lumber Company Inc., H.J. Crabbe & Sons Ltd.,
Langevin Forest Products Inc., Marwood Ltd.,
North American Forest Products Ltd., and Twin
Rivers Paper Co. Inc.

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

## COMPANY CERTIFICATION

I, Duane Woods, President of Chaleur Sawmills LP (a member of the New Brunswick Lumber Producers), certify that I prepared or otherwise supervised the preparation of the attached Rebuttal to Petitioner's Comments on CBP Data and Request for Sampling, dated March 29, 2021, pursuant to the antidumping duty administrative review of Certain Softwood Lumber Products from Canada, Case No. A-122-857. I certify that the public information and any business proprietary information contained in this submission is accurate and complete to the best of my knowledge. I am aware that the information contained in this submission may be subject to verification or corroboration (as appropriate) by the U.S. Department of Commerce. I am also aware that U.S. law (including but not limited to, 18 U.S.C. § 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government. In addition, I am aware that, even if this submission may be withdrawn from the record of the AD proceeding, the U.S. Department of Commerce may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification. I certify that a copy of this signed certification will be filed with this submission to the U.S. Department of Commerce.

Dated: March 29, 2021

Duane Woods

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

## REPRESENTATIVE CERTIFICATION

I, Richard L.A. Weiner, with Sidley Austin LLP, counsel to Chaleur Sawmills LP, Delco Forest Products Ltd., Devon Lumber Co. Ltd., Fornebu Lumber Company Inc., H.J. Crabbe & Sons Ltd., Langevin Forest Products Inc., Marwood Ltd., North American Forest Products Ltd., and Twin Rivers Paper Co. Inc., certify that I have read the attached Rebuttal to Petitioner's Comments on CBP Data and Request for Sampling, dated March 29, 2021, pursuant to the antidumping duty administrative review of Certain Softwood Lumber Products from Canada, Case No. A-122-857.  In my capacity as an adviser, counsel, preparer, or reviewer of this submission, I certify that the information contained in this submission is accurate and complete to the best of my knowledge.  I am aware that U.S. law (including, but not limited to 18 U.S.C. § 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government.  In addition, I am aware that, even if this submission may be withdrawn from the record of the AD proceeding, the Department may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification.  I certify that I am filing a copy of this signed certification with this submission to the U.S. Department of Commerce and that I will retain the original for a five-year period commencing with the filing of this document.  The original will be available for inspection by U.S. Department of Commerce officials.

Dated: March 29, 2021

Richard L.A. Weiner

Barcode:4104321-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

## CERTIFICATE OF SERVICE

I hereby certify that copies of the attached public submission have been served by courier, except for those parties who consent to service by email, on March 29, 2021, addressed to the following parties:

**On behalf of The Government of Canada:**
Joanne Osendarp, Esq.
McDermott Will & Emery
500 N. Capitol Street, NW
Washington, DC 20001-1531

**On behalf of British Columbia Lumber Trade Council: Interfor Corporation, et al.:**
Amy Jenkins Lentz
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795

**On behalf of Government of Alberta, et al.**
Lynn Fischer Fox, Esq.
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001

**On behalf of Committee Overseeing Action for Lumber International Trade Investigations or Negotiations, et al.:**
Lisa W. Wang
Picard Kentz & Rowe LLP
1750 K Street, NW
Suite 800
Washington, DC 20006

**On behalf of Resolute FP Canada Inc., et al:**
Elliot J. Feldman
Baker & Hostetler LLP
1050 Connecticut Ave., NW
Suite 1100
Washington, DC 20036-5304

**On behalf of Direct Cedar Supplies Ltd., et al.:**
Heather Jacobson
Junker & Nakachi, P.C.
999 Third Avenue,
Suite 2525
Seattle, WA 98104

**On behalf of Canfor Corporation:**
Donald B. Cameron
Morris, Manning & Martin, LLP
1401 I Street, NW
Suite 600
Washington, DC 20005

**On behalf of West Fraser Mills Ltd.:**
Donald Harrison
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., NW
Washington, DC 20036-5306

**On behalf of Sierra Pacific Industries:**
Stephanie Hartmann
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006

**On behalf of Rayonier A.M. Canada GP, et al.:**
Myles Getlan
Cassidy Levy Kent (USA) LLP
900 19th Street, NW
Suite 400
Washington, DC 20006

Richard L.A. Weiner

_____

**On behalf of Carrier Forest Products Ltd.,**
**et al.:**
Jeffrey S. Grimson
Mowry & Grimson PLLC
5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015

**On behalf of Burrows Lumber (CD) Ltd.,**
**et al.:**
Chris Dirks
25 Trotter Bay
Winnipeg, Manitoba Canada
R3T 3R3

**On behalf of Government of Ontario:**
H. Deen Kaplan
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004

**On behalf of Government of Québec:**
Matthew J. Clark
Arent Fox LLP
1717 K Street, NW
Washington, DC 20006-5344

# Exhibit 3

| Document |
|----------|
| Letter from White & Case LLP to Commerce, Case Brief (Mar. 14, 2022) (POR: 01/01/2020-12/31/2020) |

**WHITE & CASE**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
**T** +1 202 626 3600

**whitecase.com**

March 14, 2022

Case No. A-122-857
Total Pages:  18
Administrative Review
For the Period 01/01/20 - 12/31/20
AD/CVD Operations, Office IV
Contains No Business Proprietary Information
**PUBLIC DOCUMENT**

BY ELECTRONIC FILING

The Honorable Gina M. Raimondo
Secretary of Commerce
Attention: Enforcement and Compliance
APO/Dockets Unit, Room 18022
U.S. Department of Commerce
14th Street and Constitution Avenue, NW
Washington, DC 20230

Re:    **Certain Softwood Lumber Products from Canada:  Case Brief**

Dear Secretary Raimondo:

On behalf of J.D. Irving, Limited ("J.D. Irving"), we hereby submit J.D. Irving's case

brief in the above-referenced administrative review.  This submission will be served as indicated

in the attached Certificate of Service.  Please contact us if you have any questions regarding this

submission.

Respectfully submitted,

Walter J. Spak
Jay C. Campbell
Cristina M. Cornejo
WHITE & CASE LLP
*Counsel to J.D. Irving, Limited*

Barcode:4221780-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20



J. D. Irving, Limited
300 Union Street
Saint John, NB
E2L 4Z2

I, M. Ross Langley, Secretary and authorized signatory of J.D. Irving, Limited, certify that I prepared or otherwise supervised the preparation of the attached Case Brief, filed on March 14, 2022, pursuant to the Administrative Review for the period January 1, 2020 – December 31, 2020, under the antidumping duty order on softwood lumber from Canada (Case Number A-122-857). I certify that the public information and any business proprietary information of J.D. Irving, Limited contained in this submission is accurate and complete to the best of my knowledge. I am aware that the information contained in this submission may be subject to verification or corroboration (as appropriate) by the U.S. Department of Commerce. I am also aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government. In addition, I am aware that, even if this submission may be withdrawn from the record of the antidumping duty proceeding, the U.S. Department of Commerce may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification. I certify that a copy of this signed certification will be filed with this submission to the U.S. Department of Commerce.

Signature:

Date:         March 14, 2022

Barcode:4221780-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

CERTIFICATION OF LEGAL REPRESENTATIVE

I, Jay C. Campbell, with the law firm of White & Case LLP, counsel to J.D. Irving, Limited ("J.D. Irving"), certify that I have read the attached case brief, filed on March 14, 2022, pursuant to the Administrative Review for the period January 1, 2020 – December 31, 2020 under the Antidumping Duty Order on Certain Softwood Lumber Products from Canada (Case Number A-122-857).  In my capacity as counsel for this submission, I certify that the information contained in this submission is accurate and complete to the best of my knowledge.  I am aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. Government.  In addition, I am aware that, even if this submission may be withdrawn from the records of the antidumping duty proceeding, the Department may preserve this submission, including a business proprietary submission, for purposes of determining the accuracy of this certification.  I certify that a copy of this signed certification will be filed with this submission to the U.S. Department of Commerce.

Signature:   _____

Date:   March 14, 2022

Barcode:4221780-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

Case No. A-122-857
Administrative Review for the Period 1/1/2020 – 12/31/2020
**PUBLIC CERTIFICATE OF SERVICE**

I, Jay C. Campbell, certify the attached submission will be served electronically on this 14th day of March 2022 on the following interested parties:

Donald Harrison, Esq.
**Gibson, Dunn & Crutcher LLP**
1050 Connecticut Ave., NW
Washington, DC  20036-5306
Email: dharrison@gibsondunn.com

Elliot J. Feldman, Esq.
**Baker Hostetler LLP**
Suite 1100
1050 Connecticut Avenue, NW
Washington, DC  20036-5304
Email: efeldman@bakerlaw.com

Donald B. Cameron, Esq.
**Morris, Manning & Martin, LLP**
Suite 600
1401 I Street, NW
Washington, DC  20005
Email: dcameron@mmmlaw.com

Lynn Fischer Fox, Esq.
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Avenue, NW
Washington, DC  20001
Email: lynn.fischerfox@apks.com

Amy Jenkins Lentz, Esq.
**Steptoe & Johnson LLP**
1330 Connecticut Avenue, NW
Washington, DC  20036
Email: alentz@steptoe.com

Zachary J. Walker, Esq.
**Picard Kentz & Rowe LLP**
Suite 800
1750 K Street, NW
Washington, DC  20006
Email: zwalker@pkrllp.com

Heather Jacobson, Esq.
**Junker & Nakachi, P.C.**
Suite 100
2815 Elliott Avenue
Seattle, WA 98121-2991
Email: hjacobson@tradelawcounsel.com

Jeffrey S. Grimson, Esq.
**Mowry & Grimson, PLLC**
Suite 810
5335 Wisconsin Avenue, NW
Washington, DC  20015
Email: jsg@mowrygrimson.com

Myles Getlan, Esq.
**Cassidy Levy Kent (USA) LLP**
Suite 400
900 19th Street, NW
Washington, DC  20006
Email: mgetlan@cassidylevy.com

Stephanie Hartmann, Esq.
**Wilmer Cutler Pickering Hale and Dorr LLP**
1875 Pennsylvania Ave., NW
Washington, DC 20006
Email: stephanie.hartmann@wilmerhale.com

Richard L.A. Weiner, Esq.
**Sidley Austin LLP**
1501 K Street, NW
Washington, DC  20005
Email: rweiner@sidley.com

Joanne E. Osendarp, Esq.
**McDermott Will & Emery**
500 N. Capitol Street, NW
Washington, DC 20001-1531
Email: josendarp@mwe.com

H. Deen Kaplan, Esq.
**Hogan Lovells US LLP**
555 Thirteenth Street, NW
Washington, DC  20004-1229
Email: deen.kaplan@hoganlovells.com

Matthew J. Clark, Esq.
**Arent Fox LLP**
1717 K Street, NW
Washington, DC  20006-5344
Email: matthew.clark@arentfox.com

Spencer S. Griffith, Esq.
**Akin Gump Strauss Hauer & Feld LLP**
2001 K Street NW
Washington, DC 20006
Email: sgriffith@akingump.com

Mark Lehnardt, Esq.
**Law Office of David L. Simon**
Suite 1000
1025 Connecticut Avenue, NW
Washington, DC 20006
Email: marklehnardt@dlsimon.com

Chris Dirks
**Burrows Lumber (CD) Ltd.**
Theo A Burrows Lumber Company Limited.
25 Trottier Bay
Winnipeg, Manitoba Canada  R3T 3R3
Email: cdirks@burrowslumber.com

_____
Jay C. Campbell

Barcode:4221780-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

# UNITED STATES DEPARTMENT OF COMMERCE

Case No. A-122-857
Total Pages:  18
Administrative Review
For the Period 01/01/20 - 12/31/20
AD/CVD Operations, Office V

**PUBLIC DOCUMENT**

|  |  |
|---|---|
| IN THE MATTER OF: | ) |
|  | ) |
| CERTAIN SOFTWOOD LUMBER PRODUCTS | ) |
| FROM CANADA | ) |

## CASE BRIEF OF

## J.D. IRVING, LIMITED

Walter J. Spak
Jay C. Campbell
Cristian M. Cornejo

WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005-3807
(202) 626-3600
Counsel to J.D. Irving, Limited

March 14, 2022

TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     THE AD CASH DEPOSIT RATE ASSIGNED TO J.D. IRVING MUST BE
        UPDATED TO REFLECT THE COMPANY'S DUMPING MARGIN FOR 2020 ......... 1

        A.      Failing To Update J.D. Irving's Cash Deposit Rate Would Violate the
                Statute, Which Requires Assessment and Cash Deposit Rates To Be
                Derived from the Same Dumping Margin ............................................................ 2

        B.      Failing to Update J.D. Irving's Cash Deposit Rate Would Violate
                Congressional Intent and Be Arbitrary ............................................................... 5

III.    CONCLUSION ......................................................................................................... 9

Barcode:4221780-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

# TABLE OF AUTHORITIES

## CASES

*Allegheny Ludlum Corp. v. United States,*
  346 F.3d 1368 (Fed. Cir. 2003) ............................................................. 3

*Federal-Mogul Corp. v. United States,*
  822 F. Supp. 782 (Ct. Int'l Trade 1993) ....................................... 4, 6-7

*Koyo Seiko Co. v. United States,*
  110 F. Supp. 2d 934 (Ct. Int'l Trade 2000), *aff'd* 258 F.3d 1340 (Fed. Cir. 2001) .............. 3

*OKI Elec. Indus. Co. v. United States,*
  669 F. Supp. 480 (Ct. Int'l Trade 1987) ........................................... 7

*Torrington Co. v. United States,*
  44 F.3d 1572 (Fed. Cir. 1995) ........................................................... 3

*Transcom, Inc. v. United States,*
  182 F.3d 876 (Fed. Cir. 1999) ........................................................... 4

## STATUTES AND REGULATIONS

19 U.S.C. § 1673e(a)(3) ………………………………………………………………………3

19 U.S.C. § 1675(a)(2)(C) .................................................................... 3

19 C.F.R. § 351.212(c)(1) ................................................................. 3, 5

## ADMINISTRATIVE DETERMINATIONS

*Antidumping Duties,*
  54 Fed. Reg. 12742 (Mar. 28, 1989) ................................................. 4

*Certain Softwood Lumber Products from Canada,*
  82 Fed. Reg. 51806 (Nov. 8, 2017) ................................................... 2

*Certain Softwood Lumber Products from Canada,*
  83 Fed. Reg. 350 (Jan. 3, 2018) ....................................................... 2

*Certain Softwood Lumber Products from Canada,*
  85 Fed. Reg. 76519 (Nov. 30, 2020) ............................................. 2, 8

*Certain Softwood Lumber Products from Canada,*
  86 Fed. Reg. 68471 (Dec. 2, 2021) ........................................... 2, 5, 7

*Certain Softwood Lumber Products from Canada,*
  87 Fed. Reg. 6506 (Feb. 4, 2022) ..................................................... 1

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
  86 Fed. Reg. 12599 (Mar. 4, 2021) .............................................. 1, 7

Barcode:4221780-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

*Large Power Transformers from Italy*,
   52 Fed. Reg. 48606 (Dec. 10, 1987) .................................................................. 3

*Steel Jacks from Canada*,
   50 Fed. Reg. 42577 (Oct. 21, 1985).................................................................. 3

## LEGISLATIVE MATERIALS

H.R. Report 98-725, 98th Cong., 2nd Sess. (May 1, 1984)........................................... 6

H.R. Report 98-1156, 98th Cong., 2nd Sess. (Oct. 5, 1984).................................... 4, 6

Trade Agreements Act of 1979 (Pub. L. 96-39, 93 STAT. 144 July 26, 1979),
   *codified at* 19 U.S.C. § 1675(a)(1) (1982 edition)................................. 6

Trade and Tariff Act of 1984 (Pub. L. 98-573, 98 STAT. 2948 Oct. 30, 1984),
   *codified at* 9 U.S.C. § 1675(a)(1) (1988 edition)................................. 6

Filed By: jcampbell@whitecase.com, Filed Date: 3/14/22 4:21 PM, Submission Status: Approved

## I.    INTRODUCTION

On behalf of J.D. Irving, Limited ("J.D. Irving"), we present this case brief for the Department's consideration in the 2020 administrative review pursuant to the antidumping duty ("AD") order on softwood lumber products from Canada (A-122-857).   The Department's preliminary determination indicates that, upon conclusion of the review, it will update the mandatory respondents' and non-selected companies' AD cash deposit rates to reflect the 2020 dumping margins determined in the review.[1]   In accordance with the statute, regulation, and congressional intent, the Department must also update J.D. Irving's AD cash deposit rate to reflect its dumping margin determined for the period of review ("POR") (calendar year 2020) by operation of law under 19 C.F.R. § 351.212(c)(1).

## II.    THE AD CASH DEPOSIT RATE ASSIGNED TO J.D. IRVING MUST BE UPDATED TO REFLECT THE COMPANY'S DUMPING MARGIN FOR 2020

J.D. Irving is not subject to the year-2020 review because no interested party requested a review of the company.[2]   Nevertheless, in accordance with Section 751(a)(2)(C) of the Act, the Department's regulations, and congressional intent, J.D. Irving's AD cash deposit rate must be updated to reflect the company's dumping margin established for the year-2020 POR (until changed in a review for a subsequent period, *e.g.*, 2021, 2022, 2023).   Contrary to the law, the preliminary results indicate the Department will update only the mandatory respondents' and non-selected companies' AD deposit rates to reflect dumping during the 2020 POR.   In the final results, J.D. Irving's AD deposit rate must also be updated to reflect its 2020 dumping rate.

---

[1] *See Certain Softwood Lumber Products from Canada*, 87 Fed. Reg. 6506, 6506-07 (Feb. 4, 2022) (prelim. results year-2020 review) ("*Preliminary AD Results*").

[2] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 12599, 12603 (Mar. 4, 2021) ("*POR 2020 Initiation Notice*") (omitting J.D. Irving from the list of Canadian producers/exporters subject to the year-2020 review).

### A.   Failing To Update J.D. Irving's Cash Deposit Rate Would Violate the Statute, Which Requires Assessment and Cash Deposit Rates To Be Derived from the Same Dumping Margin

The statute requires the Department to derive both assessment and cash deposit rates from the same dumping margin.  In J.D. Irving's case, however, the AD assessment and deposit rates are inconsistent and based on dumping margins for different periods:   Unless the Department takes appropriate action, final AD duties will be *assessed* on J.D. Irving imports of subject merchandise entered during the 2020 POR at dumping rates established by operation of law *for 2020* (6.04% and 1.57%), while AD *cash deposits* will continue to be collected at a dumping rate calculated *for 2019* (11.59%).[3]  To comply with the statute, in the final results the Department also must update J.D. Irving's AD cash deposit rate to reflect the year-2020 dumping margin determined for the company by operation of law.   Under the law, the AD deposit rate should be consistent with the assessment rate determined for the most recent POR.

The plain language of Section 751(a)(2)(C) of the Act requires the Department to use the same dumping margin as the basis for both the assessment of AD duties and the collection of AD cash deposits for future entries, stating:  "The determination under {§ 1675(a)} shall be the basis

---

[3] From November 8, 2017, until November 29, 2020, AD cash deposits were collected on entries of subject merchandise produced and exported by J.D. Irving at a rate of 6.04%.  *See Certain Softwood Lumber Products from Canada*, 82 Fed. Reg. 51806, 51808 (Nov. 8, 2017) (final LTFV determ.) (setting a final All-Others cash deposit rate of 6.58%); *Certain Softwood Lumber Products from Canada*, 83 Fed. Reg. 350, 351 (Jan. 3, 2018) (AD order and amended final LTFV determ.) (amending the All-Others cash deposit rate to 6.04%); *Certain Softwood Lumber Products from Canada*, 85 Fed. Reg. 76519, 76520-21 (Nov. 30, 2020) (final results 2017-2018 AD review) (setting a Non-Selected Companies cash deposit rate of 1.57%) ("*Final 2017-2018 Review Results*").  From November 30, 2020, until December 1, 2021, AD cash deposits were collected on entries of subject merchandise produced and exported by J.D. Irving at a rate of 1.57%.  *See Final 2017-2018 Review Results* at 76520-21.  On December 2, 2021, upon publishing the final results of the 2019 AD review, the Department changed J.D. Irving's AD cash deposit rate to 11.59%.  *See Certain Softwood Lumber Products from Canada*, 86 Fed. Reg. 68471, 68472 & 68474 (Dec. 2, 2021) (final results 2019 admin. review) ("*2019 Review Final Results*").

2

for the assessment of . . . antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties."[4]  The courts have affirmed this principle, noting that Section 751(a)(2)(C) "requires that both the deposit rate and the assessment rate be derived from the same dumping margin differential . . . ."[5]  Because the deposit rate is an estimate of the respondent's future dumping behavior, the requirement that the deposit and assessment rates be consistent also means that the AD deposit rate should reflect the assessment rate established for the most recent POR.[6]

Section 751(a)(2)(C)'s requirement applies equally to assessment and deposit rates for unreviewed entries, which are subject to the automatic assessment provision under 19 C.F.R. § 351.212(c)(1).[7]  As recognized by the U.S. Court of International Trade, the Department's

---

[4] 19 U.S.C. § 1675(a)(2)(C).

[5] *Koyo Seiko Co. v. United States*, 110 F. Supp. 2d 934, 942 (Ct. Int'l Trade 2000), *aff'd* 258 F.3d 1340, 1342 (Fed. Cir. 2001) (citation omitted) ("Commerce uses the dumping margin to assess antidumping duties on merchandise imported during the review period, and also to calculate 'cash deposits of estimated duties for future entries' of the subject merchandise."); *see also Torrington Co. v. United States*, 44 F.3d 1572, 1578 (Fed. Cir. 1995) ("Section 1675(a)(2) . . . requires that PUDD, the difference between foreign market value and United States price, serve as the basis for both assessed duties and cash deposits of estimated duties.").

[6] *See* 19 U.S.C. § 1673e(a)(3) (requiring "the deposit of estimated antidumping duties pending liquidation of entries of merchandise at the same time as estimated normal customs duties on that merchandise are deposited"); *Large Power Transformers from Italy*, 52 Fed. Reg. 48606, 48610 (Dec. 10, 1987) (final results admin. review) ("We believe the margin for the most recently reviewed period is generally the best estimate we have of the producer's current behavior."); *Steel Jacks from Canada*, 50 Fed. Reg. 42577, 42579 (Oct. 21, 1985) (final results admin. review) ("{I}t is the Department's practice to establish its estimated duty deposit rate based upon the weighted-average margin for all sales during the most recent period reviewed.  We do this because the most recent period should be the best indicator of future marketing practices".).  *See also Allegheny Ludlum Corp. v. United States*, 346 F.3d 1368, 1373 (Fed. Cir. 2003) ("{W}e discern a congressional intent that cash deposit rates be accurate and current; we see no congressional intent indicating how Commerce should accomplish that goal.").

[7] This provision states, "If the Secretary does not receive a timely request for an administrative review of an order . . . , the Secretary . . . will instruct the Customs Service to . . . {a}ssess antidumping duties . . . on the subject merchandise . . . at rates equal to the cash deposit of . . .

authority to implement the automatic assessment provision, § 351.212(c), stems from Section

751(a)(2) of the Act:

> {T}his Court finds that the statutory framework for administrative reviews clearly
> anticipates that in cases where a company makes cash deposits on entries of
> merchandise subject to antidumping duties, and no administrative review of those
> entries is requested, the cash deposit rate automatically becomes that company's
> assessment rate for those entries. 19 U.S.C. § 1675(a)(2); 19 C.F.R. § 353.22(e).
> Defendant has admitted this. *Defendant's Memorandum* at 17. This also was
> clearly the ITA's interpretation of the statute when it promulgated its current
> regulations. *Antidumping Duties; Final Rule*, 54 Fed. Reg. at 12,756.[8]

For this reason, the Department has explained that the absence of a "request for review

***constitutes a determination under section 751 of the dumping margin for the entries made***

***during the review period***."[9]  Further, the U.S. Court of International Trade has found that:

> {Section} 1675(a)(2)'s requirement that the ITA's determination of a company's
> antidumping duty assessment rate during an administrative review 'shall be the
> basis . . . for deposits of estimated duties' requires the ITA to use the assessment
> rate determined in an administrative review as the new cash deposit rate for that
> company. In a situation where a company's entries are unreviewed, ***the
> prior cash deposit rate*** . . . becomes the assessment rate, which ***must in turn
> become the new cash deposit rate for that company***.[10]

Accordingly, Section 751(a)(2)(C)'s requirement – that the AD deposit rate going forward must

be based on the same dumping margin used for the assessment rate – applies equally to

---

estimated antidumping duties . . . required on that merchandise at the time of entry, . . . and . . .
{t}o continue to collect the cash deposits previously ordered.").  19 C.F.R. § 351.212(c)(1).

[8] *Federal-Mogul Corp. v. United States*, 822 F. Supp. 782, 787-88 (Ct. Int'l Trade 1993). *See
also* H.R. Report 98-1156, 98th Cong., 2nd Sess., at 181 (Oct. 5, 1984) (noting Congress's
intention that the Department "provide by regulation for the assessment of antidumping and
countervailing duties on entries for which review is not requested, including the elimination of
suspension of liquidation, and/or the conversion of cash deposits of estimated duties, previously
ordered"); *Transcom, Inc. v. United States*, 182 F.3d 876, 880 (Fed. Cir. 1999) (quoting *Federal-
Mogul*, 822 F. Supp. at 787-88).

[9] *Antidumping Duties*, 54 Fed. Reg. 12742, 12756 (Mar. 28, 1989) (final rule) (emphasis added).

[10] *Federal-Mogul*, 822 F. Supp. at 788 (emphasis added).

unreviewed foreign producers/exporters that receive assessment and deposit rates by operation of law under 19 C.F.R. § 351.212(c)(1).

Here, because a year-2020 AD review was not requested of J.D. Irving, the Department instructed U.S. Customs and Border Protection ("CBP") to assess AD duties on the company's imports of subject merchandise during the 2020 POR at the cash deposit rates that applied at the time of entry (6.04% and 1.57%), and to continue collecting AD cash deposits at the most recent AD cash deposit rate applicable in 2020 (1.57%). Thus, in accordance with Section 751(a)(2)(C) of the Act and 19 C.F.R. § 351.212(c)(1), J.D. Irving was assigned assessment and deposit rates for the 2020 POR. Subsequently, however, the Department issued the final results in the 2019 review of the AD duty order on softwood lumber from Canada, and changed J.D. Irving's cash deposit rate to 11.59%, the Non-Selected Companies Rate calculated for the 2019 POR.[11]  As discussed, Section 751(a)(2)(C) of the Act requires the assessment and deposit rates to be derived from the same dumping margin. Consequently, in accordance with Section 751(a)(2)(C), J.D. Irving's AD cash deposit rate must be updated to reflect the company's most recent AD assessment rate (1.57%).

### B.    Failing to Update J.D. Irving's Cash Deposit Rate Would Violate Congressional Intent and Be Arbitrary

Failing to update J.D. Irving's AD cash deposit rate to the company's dumping margin for the 2020 POR would also violate congressional intent – which was to prevent the Department from having to conduct administrative reviews when petitioners and respondents alike are satisfied with existing AD rates. Moreover, failing to update J.D. Irving's cash deposit rate

---

[11] *See 2019 Review Final Results* at 68472 & 68474. In an appeal filed with the U.S. Court of International Trade, J.D. Irving argues that the Department's cash deposit instructions (assigning J.D. Irving the AD deposit rate from the 2019 review) are unlawful, because J.D. Irving already had an AD deposit rate established by operation of law for a more recent period, the 2020 POR. *See J.D. Irving, Limited v. United States and U.S. Department of Commerce*, CIT No. 21-00641.

would be arbitrary – updating AD cash deposit rates for companies subject to the review based on dumping margins calculated for 2020, but not updating AD cash deposit rates for unreviewed companies with agreed-upon dumping margins for 2020.

Originally, the Department was required under Section 751(a) of the Act to conduct annual reviews of ***all*** outstanding AD and countervailing duty ("CVD") orders; there was no provision for interested parties to request reviews.[12]   That changed with enactment of the Trade and Tariff Act of 1984 by which Congress amended Section 751(a) to require the Department to conduct annual reviews only "if a request for such a review has been received."[13]   The corresponding legislative history explains that the "purpose of amending the annual review requirement {was} to reduce the administrative burden on the Department of Commerce of automatically reviewing every outstanding order even though circumstances do not warrant it or ***parties to the case are satisfied with the existing order***."[14]   Congress also intended for the request-for-review requirement to "limit{} the burden on petitioners and respondents, as well as the administering authority."[15]

In *Federal-Mogul*, the U.S. Court of International Trade held that Congress's purpose for amending Section 751(a) would be undermined if the Department were arbitrarily to change an

---

[12]  *See* Trade Agreements Act of 1979 (Pub. L. 96-39, 93 STAT. 144, 175, July 26, 1979), *codified at* 19 U.S.C. § 1675(a)(1) (1982 edition) ("At least once during each 12-month period beginning on the anniversary of the date of publication of . . . an antidumping duty order . . . , the administering authority . . . shall . . . review and determine (in accordance with paragraph (2)), the amount of any antidumping duty, and . . . shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.").

[13]  Trade and Tariff Act of 1984 (Pub. L. 98-573, 98 STAT. 2948, 3031, Oct. 30, 1984), *codified at* 9 U.S.C. § 1675(a)(1) (1988 edition).

[14]  H.R. Report 98-725, 98th Cong., 2nd Sess., at 22-23 (May 1, 1984) (emphasis added).

[15]  H.R. Report 98-1156, 98th Cong., 2nd Sess., at 181 (Oct. 5, 1984).

AD cash deposit rate from the dumping rate to which interested parties agreed by not requesting a review:

> ***In making a decision whether or not to request an administrative review of certain entries, the parties rely on the cash deposit rate <u>then in force</u> for those entries.*** If the ITA is allowed to arbitrarily change this cash deposit rate for unreviewed firms, which are ***presumably unreviewed because the parties are happy with assessments <u>and future cash deposits</u> being made at that cash deposit rate***, in many cases the parties will be required to request administrative reviews of all entries of the subject merchandise. Importers and foreign producers will make the request so their future entries will not be subject to a potentially higher "all others" cash deposit rate. Likewise, the domestic industry will request reviews to ensure that future entries will not be subject to a potentially lower "all others" cash deposit rate. ***This will have the effect of increasing the number and complexity of administrative reviews thereby defeating the express purpose of the 1984 amendment.***[16]

Here, neither J.D. Irving nor any U.S. producer requested a review of J.D. Irving for the year-2020 POR,[17] signifying that both sides were satisfied that the AD cash deposit rates in effect during that period reflected J.D. Irving's dumping margin in 2020. Despite this, the Department later assigned J.D. Irving an AD cash deposit rate based on a dumping margin calculated for 2019, the ***prior*** POR.[18] By assessing AD duties on entries at an agreed-upon dumping rate for one year, while collecting AD cash deposits at a dumping rate calculated for an ***earlier*** year, the Department all but compels parties to request reviews – even when they are satisfied with existing AD rates. Without certainty that, in the absence of a request for review, the existing AD cash deposit rate would continue to apply until completion of an administrative

---

[16] *Federal-Mogul*, 822 F. Supp. at 788 (emphases added). *See also OKI Elec. Indus. Co. v. United States*, 669 F. Supp. 480, 486 (Ct. Int'l Trade 1987) (stating that, through the 1984 amendment to Section 751(a) of the Act, "Congress sought to avoid unnecessary 751 reviews where the parties to the case were satisfied.").

[17] *See POR 2020 Initiation Notice* at 12603 (omitting J.D. Irving from the list of Canadian producers/exporters subject to the year-2020 review).

[18] *See 2019 Review Final Results* at 68472 & 68474. Again, J.D. Irving has appealed the Department's 2019 AD cash deposit instructions to the U.S. Court of International Trade.

7

review for a subsequent period, parties are unable to make an informed decision of whether to request a review.  As recognized by the U.S. Court of International Trade, injecting uncertainty into the review-request-decision-making process violates congressional intent, and increases the burden on the Department and parties alike with unnecessary reviews.

Moreover, failing to update J.D. Irving's cash deposit rate to reflect the 2020 dumping margin would be arbitrary and unreasonable.  Upon conclusion of the 2020 review, the Department will update the AD cash deposit rates for companies subject to the review to reflect their 2020 dumping margins, but intends to keep J.D. Irving's cash deposit rate at the 2019 level. Such disparate treatment of companies subject to the review and companies not subject to the review is arbitrary and impermissible.  In accordance with Section 751(a)(2)(C) of the Act and congressional intent, the AD cash deposit rates for *all* subject producers should reflect the same dumping margin as their assessment rates for the most recent POR – whether calculated in an administrative review or determined by operation of law under 19 C.F.R. § 351.212(c) – until the deposit rate is changed in an administrative review for a subsequent period.

* * * * *

For the reasons set forth above, and in accordance with the statute, regulation, and congressional intent, in the final results the Department must update J.D. Irving's AD cash deposit rate to reflect the company's dumping margin determined for the 2020 POR (*i.e.*, 1.57%).[19]

---

[19] *See Certain Softwood Lumber Products from Canada*, 85 Fed. Reg. 76519, 76520-21 (Nov. 30, 2020) (final results 2017-2018 AD review) (assigning a 1.57% AD cash deposit rate to J.D. Irving as a Non-Selected Company).

Barcode:4221780-01 A-122-857 REV - Admin Review 1/1/20 - 12/31/20

**III.**
### CONCLUSION

We respectfully request that the Department issue the final results consistent with the above comments.

Sincerely,

Walter J. Spak
Jay C. Campbell
Cristina M. Cornejo

WHITE & CASE LLP
Counsel to J.D. Irving, Limited

March 14, 2022

9